UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RODNEY SCHILLING,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PAUL PANTHER, Deputy Attorney General; MARK KUBINSKI, Deputy Attorney General(DAG) for Idaho; LESLIE HAYES, DAG for Idaho; BRENT REINKE, Former Director of Prisons (DOP) for Idaho; KEVIN KEMPF,DOP for Idaho; RANDY BLADES, Warden of Idaho Correctional Center (ICC); KEITHYORDY, Warden of Idaho State Correctional Institution (ISCI); KARA NIELSON, Office of Professional Standards (OPS) Investigator; JARED WATSON, Ada County Sheriff's Department (ACSD) Detective; and JOHN and JANE DOES; all named Defendants are named in their individual and official capacities,<br><br>　　　　　　Defendants. | Case No. 1:16-CV-00168-DCN-CWD<br><br>**REPORT AND RECOMMENDATION (DKT 23; DKT 27); AND ORDER (DKT 29)** |

## INTRODUCTION

Pending before the Court are three motions: Defendants' Motion to Dismiss (Dkt. 23), Plaintiff's Motion for Summary Judgment (Dkt. 27), and Plaintiff's Motion to Enter Exhibit 1 in support of his motion. (Dkt. 29). The parties have fully briefed the motions

REPORT AND RECOMMENDATION AND ORDER – 1

and they are ripe for the Court's consideration. Having reviewed the record herein, the Court finds the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d). After careful consideration of the briefing, the standard of review, and the relevant authorities, and for the reasons set forth below, the Court will recommend that Defendant's motion to dismiss be granted, Plaintiff's motion for summary judgment be denied as moot, and will deny Plaintiff's motion to enter Exhibit 1 as moot.[1]

## FACTUAL BACKGROUND

Plaintiff Rodney Schilling was employed as a Correctional Officer by the Idaho Department of Correction (IDOC) from July 10, 2006, to August 20, 2013. (Dkt. 1 at ¶ 15.) Schilling worked at the Idaho State Correctional Institution (ISCI) medical building and medical annex and held the rank of corporal. (Dkt. 1 at ¶ 30.) Defendants Paul Panther, Mark Kubinski, and Leslie Hayes are Deputy Attorneys General for Idaho. (Dkt. 1 at ¶ 4-6.) Defendants Brent Reinke, Kevin Kempf, Randy Blades, Keith Yordy, and Kara Nielson were, and some still are, employed in various capacities by the IDOC. (Dkt. 1 at ¶ 7-10.) Defendants Panther, Kubinski, Hayes, Reinke, Kempf, Blades, Yordy, and Nielson will be referred to collectively as "Defendants" unless the Court needs to individually identify a defendant.

Schilling's claims center around his allegation that IDOC supervisors created a work environment where loyalty to IDOC officials trumped prisoner rights. Schilling asserts that IDOC instructors instilled the idea that "all prisoners are liars," that employees should "always back up an IDOC official over a prisoner even if the IDOC official is being untruthful and the prisoner is being honest," and that employees should "never go against a supervisor." (Dkt. 1 at ¶ 16.) Schilling alleges also the existence of an "in-crowd" made up of top-ranking IDOC, state, and federal officials. *Id.* at ¶ 17. He asserts that the in-crowd expected "all IDOC employees to abide by a strict code of silence concerning the group's pattern of unlawful and unconstitutional practices," including nepotism, cronyism, retaliation, harassment, intimidation, threats, assaults, and falsifying both IDOC official records and prisoner records. *Id.* at ¶ 18.

Schilling argues that certain IDOC staff members were punished because they violated the in-crowd's "strict code of silence" after they raised complaints and spoke out against its members. *Id.* at ¶ 20. He alleges further that he knew of or witnessed the following actions taken by members of the in-crowd: entering false misconduct reports into employee personnel files, deleting positive reports in employee personnel files, performing unscheduled post reassignments, as well as shunning, demoting, and terminating employees who failed to adhere to their rules. *Id.* at ¶ 22. Schilling claims that, because of these actions, he developed genuine fear of being retaliated against by other employees—preventing him from raising verbal or written complaints against any member of the in-crowd. *Id.* at ¶ 23.

Despite this fear, Schilling still reported some prisoner complaints to IDOC staff, including complaints from medical staff and prisoners about inmates not being able to schedule an appointment with the prison doctor. Dkt. 1. He asserts that "higher up" IDOC staff turned a blind eye to the problems. Dkt. 1 at ¶ 31. Schilling alleges also that he reported these complaints to Defendants, and others, but was either ignored or told to stand down. Dkt. 1 at ¶ 33.

Additionally, during his time as an employee of IDOC, Schilling met an inmate named Lance Wood, who was well-known for being a *Balla* class representative. (Dkt. 1 at ¶ 34, 35.) The *Balla* case is an ongoing class action lawsuit involving prisoner civil rights claims.[2] Schilling chose to be a witness in the *Balla* case and agreed also to be a witness in Mr. Wood's own federal case, *Wood v. Martin*. (Dkt. 1 at ¶ 43.)

On December 19, 2012, Schilling testified in Mr. Wood's case regarding the cronyism existing among the IDOC staff. (Dkt. 1 at ¶ 44.) Schilling claims that he was later subjected to retaliation at work because of his testimony. (Dkt. 1 at ¶ 45.) Specifically, Schilling asserts that Defendants Blades and Yordy began treating him "in a harsher tone and intimidating posture" by undertaking an internal investigation. (Dkt. 1 at ¶ 29.) According to Defendants, the internal investigation of Schilling stemmed from allegations that he had smuggled contraband into the prison, and that Schilling improperly wore his IDOC uniform on two occasions to serve process. (Dkt. 1 at ¶ 51, 54.)

---

[2] *Balla v. Idaho State Bd. of Corr.*, No. 1:81-CV-01165-BLW (D. Idaho May 15, 1981).

**REPORT AND RECOMMENDATION AND ORDER – 4**

The investigation included the following actions by IDOC supervisors: March 4, 2013 – Schilling was interrogated over the telephone by Defendant Watson at the request of IDOC officials; June 12, 2013 – he was interrogated again, this time by Defendant Nielson, an Office of Professional Standards Investigator; June 27, 2013 – Defendant Reinke provided authorization to Defendant Nielson to have Schilling take a polygraph examination, presumably regarding the internal investigation into Schilling's conduct. (Dkt. 1 at ¶ 52, ¶ 54 and ¶ 55.) Additionally, Schilling alleges that, on June 28, 2013, and July 5, 2013, Defendant Nielson attempted to force him to take another polygraph examination. *Id.* at ¶ 56. Schilling refused each time and claims the polygraph examination was retaliation for his testimony in Wood's lawsuit. *Id.*

On July 27, 2013, Defendant Blades issued a Notice of Contemplated Action advising Schilling that he would be subject to termination due to the result of the internal investigation. Schilling responded to the notice on August 9, 2013. (Dkt. 1 at ¶ 57.) On August 20, 2013, IDOC terminated Schilling's employment. *Id*. at ¶ 58. Schilling appealed the termination with the Idaho Personnel Commission on September 19, 2013. *Id*. at ¶ 59. Schilling's termination from employment was upheld.[3] *Id.* at ¶ 60.

## PROCEDURAL BACKGROUND

The original lawsuit in this matter was filed on March 17, 2015, under the caption *Lance Wood and Renee Wood v. Paul Panther, et al.*, Case No. 1:15-CV-00092-CWD. (Dkt. 26 at 2.) On August 20, 2015, Schilling joined the lawsuit by way of a First

---

[3] The record does not contain further details regarding the events leading up to the internal investigation of Schilling's actions as an employee nor any specific reasons for his termination.

Amended Complaint under a new caption, *Lance Wood, Renee Wood, and Rodney Schilling v. Paul Panther, et al. Id.* The Court entered an Initial Review Order on September 30, 2015, finding that the First Amended Complaint failed meet the *Iqbal* pleading standard. *Id.* The order permitted Schilling to file an amended complaint addressing the pleading insufficiencies.

On December 24, 2015, Schilling filed his Second Amended Complaint. (Dkt 1.) The Court later issued an order severing Schilling's claims from those of Lance and Renee Wood.[4] *Id.* Schilling's Second Amended Complaint alleges violations of the First and Eighth Amendments under 42 U.S.C. Sections 1983 and 1985.

On May 22, 2017, Defendants timely filed a motion to dismiss Schilling's Second Amended Complaint for failure to state a claim. (Dkt. 23.) On June 19, 2017, Schilling filed a motion for extension of time. (Dkt. 25.) Thereby, Schilling requested a 90-day extension to amend his Second Amended Complaint to include new causes of action. Schilling asserted further that he was waiting for the assistance of an attorney. (Dkt. 25.) However, along with these good cause reasons for an extension, the motion included notice that Schilling sought to amend his complaint to add three new claims. He did not, however, file a proposed third amended complaint for the Court's consideration.

Instead, Schilling filed the pending motion for summary judgment on July 10, 2017, which is based on claims made in his Second Amended Complaint, as well as new allegations set forth in his motion for extension of time. (Dkt. 25, 27.) On July 31, 2017,

---

[4] The caption *Rodney Schilling v. Paul Panther, et al.*, No. 1:16-cv-168-EJL-CWD—as is reflected within the docket.

REPORT AND RECOMMENDATION AND ORDER – 6

Defendants filed a response, arguing Schilling's motion for summary judgment was untimely filed, is unsupported by any admissible evidence, and is based upon causes of action not included in Schilling's Second Amended Complaint. (Dkt. 28.) Defendants did, however, address the merits of the additional claims in their response. Finally, on October 11, 2017, Schilling filed a Motion to Enter Exhibit 1 in support of the motion for summary judgment. (Dkt. 29.) This motion seeks permission to enter as a supportive exhibit an audio interview of Schilling taken by an IDOC employee as a part of an internal investigation of Schilling related to actions he took as an employee that ultimately resulted in termination of his employment.

In its order dated March 30, 2018, the Court indicated it would consider the merits of the additional claims in Schilling's motion for extension of time within its analysis of Schilling's 's motion for summary judgment. (Dkt. 33.) Consistent with that order, the Court has identified the following claims as asserted against the Defendants that will be consider herein in connection with Defendants' motion to dismiss:

(1)   Defendants Panther, Kubinski, Hays, Reinke, Kempf, Blades, Yordy, Nielson, and Watson conspired to violate Schilling's First Amendment rights to access to courts, freedom of speech, and freedom from retaliatory action (Dkt. 1);

(2)   Defendants Panther, Kubinski, Hays, Reinke, Kempf, Blades, Yordy, Nielson, and Watson's actions amounted to calculated harassment in violation of Schilling's Eighth Amendment rights (Dkt. 1); and

(3) Defendants violated the Idaho Whistleblower Protection Act, Section 6-2101, by acting against Schilling after he communicated his concerns to supervisors in good faith. (Dkt. 25).

Given this procedural history, the Court will now set forth the relevant standards of law and discuss the merits of the pending motions in the context of all three claims.

## STANDARD OF LAW

**1.     Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" with the purpose of giving "defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The principle "that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Twombly* at 555).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, that if accepted as true, states "a claim to relief that is plausible on its face." *Twombly* at 570. The United States Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the Court need not accept as true legal conclusions that are couched as factual allegations. *Id*. Because Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Id.* at 678–79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "The Supreme Court has explained that a court considering a motion to dismiss can begin by stripping away 'pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth…'" *Eberhard v. California Highway Patrol*, 73 F. Supp. 3d 1122, 1127–28 (N.D. Cal. 2014) (quoting *Iqbal* at 679).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

Additionally, a *pro se* complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). When a plaintiff proceeds *pro se*, a court must construe such pleadings liberally and afford the plaintiff the benefit of any doubt. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

**REPORT AND RECOMMENDATION AND ORDER – 9**

# ANALYSIS

As explained more fully below, the Court finds Schilling has failed to present plausible claims, even when the complaint and pleadings are construed liberally.

1.      **42 U.S.C. Section 1985 – Conspiracy to Interfere with Civil Rights**

In his Second Amended Complaint, Schilling asserts the Court has jurisdiction of his claims pursuant to both 42 U.S.C. Section 1983 and Sections 1985(2) and (3). However, Schilling has failed to allege any facts, in any of his pleadings or motions, sufficient to support plausible claims for conspiracy to interfere with civil rights under 42 U.S.C. Section 1985.

Section 1985 has three provisions. The first section concerns preventing an officer from performing duties. 42 U.S.C. § 1985(1) The second section concerns obstructing justice, intimidating a party, witness, or juror. *Id.* § 1985(2). Finally, the third section concerns depriving a person of rights or privileges. *Id.* § 1985(3). The Supreme Court has made it clear that Section 1985 "was not 'intended to apply to all tortious, conspiratorial interferences with the rights of others,' but only to those which were founded upon 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Briley*, 564 F.2d 849, 859 (9th Cir. 1977) (quoting *Griffin* at 403 U.S. at 1798).

The Court has performed a thorough review of Schilling's pleadings and has found no facts supporting alleged deprivations under Section 1985, and no facts supporting the conclusion that any of the Defendants' acts were fueled by or underscored by racial or invidiously discriminatory class-based animus. Therefore, Schilling's Section 1985

claims do not present plausible claims for relief and the Court will recommend such claims be dismissed.

**2.      42 U.S.C. Section 1983 – Other Constitutional Claims**

Schilling alleges also violations of Constitutional rights secured by the First and Eighth Amendments to the United States Constitution. These claims are brought pursuant to 42 U.S.C. Section 1983. To state a claim for relief "under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or other law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (U.S. 1988). The traditional definition of acting under color of state law requires that a defendant exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941).

Specifically, and as stated above, Schilling asserts that Defendants Panther, Kubinski, Hays, Reinke, Kempf, Blades, Yordy, Nielson, and Watson conspired to violate his First Amendment rights to access to courts, freedom of speech, and freedom from retaliatory action, and that the same Defendants' actions amounted to calculated harassment in violation of Plaintiff's Eighth Amendment rights. The Court will discuss the plausibility of these claims in turn.

   **A.      *First Amendment Claims***

Schilling asserts that Defendants' retaliation against him for his testimony in the *Wood* lawsuit, and for raising prisoner complaints with staff, resulted in violations of his

**REPORT AND RECOMMENDATION AND ORDER – 11**

rights to access to the courts, freedom of speech, and his right to be free from retaliation. However, the body of case law surrounding first amendment retaliation claims primarily concerns the right of prisoners "to file grievances against prison officials and to be free from retaliation for doing so." *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005); and *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 195). Although Schilling made reports to supervisors regarding treatment of inmates, Schilling is not, nor was he ever a prisoner himself during the relevant time—he was an employee of IDOC.

Further, beyond the fact that the type of claims asserted by Schilling are not supported by the factual context, he also has not demonstrated or provided facts to support plausible claims that Defendants were involved in a conspiracy, that Defendants deprived Schilling of a First Amendment right, or that the objective of Defendant's conspiracy was to injure Schilling because of his testimony in the *Wood v. Martin* lawsuit.

Additionally, Schilling has not plead facts supporting his allegation that Defendants interfered with or denied his right to access the courts. Tellingly, access to the courts claims are also typically brought by prisoners—and the body of law has developed around the constitutional right of prisoners to have access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Again, Schilling is not a prisoner.
Notably, Schilling has been actively involved in pursing this matter through the Court since its filing in 2015—a fact suggesting his access to the courts has been unhindered.

**REPORT AND RECOMMENDATION AND ORDER – 12**

Moreover, Schilling does not meet this plainly observable fact with any evidence to the contrary. In both his amended complaint and subsequent pleadings, Schilling failed to allege any specific instances where his ability to bring a lawsuit was compromised by the Defendants. Additionally, Schilling's claims are likely more properly situated in the field of employment law—discrimination and retaliation.[5] Therefore, the Court recommends that Schilling's claims regarding conspiracy by Defendants to deny him First Amendment constitutional rights of access to the courts, freedom of speech, and to remain free from retaliatory action be dismissed.

### B.     *Eighth Amendment Claims*

Schilling's Eight Amendment claim fails for similar reasons. He alleges that the Defendants' actions "amounted to harassment" in violation of his Eight Amendment rights. (Dkt. 1 at 10.) The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "Bail, fines, and punishment have traditionally been linked to the criminal process." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977).

The history of the Eighth Amendment and an examination of the decisions of the Supreme Court of the United states "confirms that it was designed to protect those convicted of crimes." *Id.* at 664. "In the few cases where the [Supreme] Court has had

---

[5] Schilling sought to add a claim under Idaho's Whistleblower Protection Act within the context of his motion for extension of time. (Dkt. 25.) The Court will discuss the merits of that claim below.

Notably, most types of civil complaints based on employment discrimination must first be filed with the Idaho Human Rights Commission or the Equal Employment Opportunity Commission and such actions must also be brought within a prescribed timeframe.

**REPORT AND RECOMMENDATION AND ORDER – 13**

occasion to confront claims that impositions outside the criminal process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable." *Id.* at 667–68. "The primary purpose of [the Eighth Amendment] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes…" *Id.* at 667, citing *Powell v. Texas*, 392 U.S. 514, 531-32 (1968).

To the Court's knowledge, at no point relevant to this case was Schilling convicted of violating a criminal statute. The Eighth Amendment was enacted to protect only those individuals convicted of a crime and it does not apply to Schilling. The Court will recommend all claims based on the Eighth Amendment be dismissed.

**2.      Idaho Protection of Public Employees Act**

Schilling has alleged also that Defendants committed violations of the Idaho Protection of Public Employees Act, also known as the "Whistleblower Protection Act."[6] Idaho Code Section 6-2101 *et seq.* The Act provides "a legal cause of action for public employees who experience adverse action from their employer as a result of reporting […] violations of a law, rule, or regulation." Idaho Code § 6-2101. Such actions must be brought within 180 days after the occurrence of the alleged violation of the chapter. *Id.* § 6-2105(2).

Schilling was terminated from his employment by IDOC on August 20, 2013. The original complaint in this matter was filed on March 17, 2015. Thus, Schilling filed his

---

[6] This claim was first raised within Schilling's Motion for Summary Judgment (Dkt. 27), and again within the Motion Extension of Time to File a Third Amended Complaint. (Dkt. 25.)

**REPORT AND RECOMMENDATION AND ORDER – 14**

complaint 574 days from the last possible date of violation of the Act. Notably, however, the whistleblower claim was not raised until June 19, 2017, within Schilling's motion for extension of time. Nevertheless, even if the Court used the earliest potential date, Schilling is time-barred from raising a claim under the Act. Therefore, the Court will recommend the claim be dismissed.

### 3.     Schilling's Motion for Summary Judgment

As set forth above, Schilling has failed to plead plausible claims as required by Fed. R. Civ. Proc. 12(b)(6), and the Court recommends that Defendants' motion to dismiss be granted as to all claims. Therefore, with no claims surviving, Schilling's motion for summary judgment (Dkt. 27) is moot, as is his motion to enter Exhibit 1 in support of the motion. (Dkt. 29.)

## CONCLUSION

For the reasons set forth above, the Court will recommend Defendants' motion to dismiss be granted because the factual matter set forth, even if accepted as true and construed liberally, does not state claims to relief that are plausible on their face. Furthermore, other than the time-barred Whistleblower Protection Act claim, Schilling does not make suggestion of employment discrimination in his filings. Thus, the Court will recommend Schilling's motion for summary judgment be denied as moot, and the Court will also deny as moot Schilling's motion to enter Exhibit 1.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1)     Plaintiffs' Motion to Enter Exhibit 1 (Dkt. 29) is **DENIED** as moot.

**REPORT AND RECOMMENDATION AND ORDER – 15**

## **RECOMMENDATION**

## NOW THEREFORE IT IS HEREBY RECOMMENDED that

1) Defendants' Motion to Dismiss (Dkt. 23) be **GRANTED**, dismissing Plaintiff's claims without prejudice; and

2) Schilling's Motion for Summary Judgment (Dkt. 27) be **DENIED** as moot.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: August 01, 2018

Candy W. Dale
U.S. Magistrate Judge